IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:08-CR-14 |
| ) | (PHILLIPS/GUYTON) |
| PERLEY WINKLER, JR., ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court, as may be appropriate. The Defendant is charged in a two-count Indictment [Doc.1], which alleges that: (1) having previously been convicted in courts of crimes punishable by terms of imprisonment exceeding one year, the Defendant did knowingly possess, in and affecting commerce, firearms, namely two Hi-Point, 9mm semiautomatic pistols, model C, and ammunition, and (2) having previously been convicted in courts of crimes punishable by terms of imprisonment exceeding one year, the Defendant did knowingly possess, in and affecting commerce, firearms, namely a Remington, 410 shotgun, Model 870 Express, a Mossberg .22 caliber rifle, Model 640KA, an IntraTec, 9 mm semiautomatic machine pistol, Mode TEC-9, and ammunition.

### I. BACKGROUND

The Defendant moves the Court to suppress all evidence seized as a result of a search of 231 Atkins Road, Monroe County, Tennessee. [Doc. 15.] Specifically, the Defendant alleges five grounds for suppression: (1) the initial entry into the Defendant's residence was without probable

cause; (2) the search warrant was issued by a General Sessions Judge in violation of the requirements of Rule 41; (3) the search warrant did not describe the premises to be searched with requisite particularity; (4) the search warrant was not supported by probable cause because the affidavit lists an address other than the one to be searched; and (5) the warrant was executed over a year after the warrant was signed. [Doc. 15.]

The Government responds that Defendant's motion should be denied because: (1) officers lawfully entered the Defendant's residence to effectuate the arrest warrant; (2) the search warrant was lawfully obtained because it was a state warrant to which Rule 41 does not apply; (3) the search warrant described the premises to be searched with sufficient particularity because it included the correct address and a photograph; (4) the transposition of digits in the street address did not undermine the probable cause supporting the search warrant; and (5) the warrant was signed on April 10, 2007, notwithstanding a typographical error indicating it was signed in 2006. [Doc. 18.]

The parties appeared before the Court for a motion hearing on September 3, 2008. Assistant United States Attorney Cynthia Davidson ("AUSA Davidson") was present representing the Government. Attorney Kim Tollison ("Attorney Tollison") represented the Defendant, who was also present. The Court heard the evidence presented and the arguments of the parties on the motion. After the hearing, both parties were allowed to file supplement briefs on the motion to suppress. [Doc. 22.] The Defendant filed his Post-Hearing Brief [Doc. 26] on September 26, 2008, and the Government filed the Government's Post-Hearing Response to Defendant's Motion to Suppress [Doc. 27] on September 26, 2008. Thus, the Court took the motion under advisement on September 27, 2008.

## II. FACTS

### A. *Detective Jennifer Bledsoe*

At the evidentiary hearing, Detective Jennifer Bledsoe ("Det. Bledsoe") testified that she had worked for the Monroe County Sheriff's Office since 2003 and primarily investigated child abuse and neglect, domestic violence, and sex crimes. Det. Bledsoe stated that she became involved with the investigation of the Defendant when the Department of Human Services contacted her regarding a reported incident of child abuse. Det. Bledsoe explained that she interviewed the Defendant's sister about the allegations and later obtained an arrest warrant for the Defendant based upon allegations made under Tennessee Code Annotated § 39-15-401. The arrest warrant was marked as **Exhibit 1** and was shown to Det. Bledsoe, and she explained that the Defendant's sister gave her the incorrect address, 321 Atkins Road, which appeared in the arrest warrant.

Det. Bledsoe testified that after she obtained the arrest warrant she spoke to Captain Michael Morgan ("Capt. Morgan") about arresting the Defendant. Based on the Defendant's known history of volatile, aggressive behavior, Capt. Morgan objected to Det. Bledsoe attempting to arrest the Defendant alone. Det. Bledsoe stated that Agent Steve Parris, of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("Agent Parris") and Vonore Police Officer Robbie Lovingood ("Officer Lovingood") were both at the Monroe County Sheriff's Department and volunteered to assist Det. Bledsoe with the arrest. Agent Parris, Officer Lovingood, and Capt. Morgan accompanied Det. Bledsoe to the Defendant's home. Deputy Travis Jones ("Deputy Jones") of the Monroe County Sheriff's Department joined them en route to the residence. Although Det. Bledsoe was not familiar with the residence or its location, she testified that the other officers were.

Upon arriving at the residence, Det. Bledsoe testified that there were two cars in the driveway. Another officer ran the registrations and the cars were registered to the Defendant. Det. Bledsoe also stated that another officer recognized one of the cars as an automobile they had previously seen the Defendant drive. Det. Bledsoe explained that the officers approached the house, and Capt. Morgan knocked on the door, which swung open. Capt. Morgan and another officer led the way into the residence and they saw marijuana and ammunition in plain sight. Upon seeing these items, Det. Bledsoe said the officers exited the home, and the other officers secured the home while she and Capt. Morgan went to get a search warrant.

The Government showed Det. Bledsoe what was previously marked as **Exhibit 2**- the search warrant. Det. Bledsoe testified that she and Capt. Morgan measured the mileage to the home on the way to obtain the search warrant, but a decimal point was accidentally omitted when the measurement was transcribed into the directions in the search warrant. Det. Bledsoe testified that instead of going four miles on Old Store Road, the correct directions would be to drive .4 miles on Old Store Road. However, Det. Bledsoe explained that if one ignored the measurement and took Old Store Road to Atkins Road, as the directions instruct, the directions would lead to the residence. Det. Bledsoe also testified that the "2006" year next to the judge's signature was supplied in the warrant template and the officers failed to change it to 2007 when they completed the warrant. Det. Bledsoe stated that the search warrant was obtained on April 10, 2007, not April 10, 2006.

The Government then showed Det. Bledsoe the affidavit that was prepared in order to obtain the search warrant, **Exhibit 3**. Det. Bledsoe testified that she and Capt. Morgan prepared the affidavit and affirmed that the affidavit contained the correct date, April 10, 2007. Det. Bledsoe verified that the affidavit listed the residence's street address as 321 Atkins Road, which was a typo.

4

On cross-examination, Det. Bledsoe conceded that if the directions were followed exactly, they would not lead to the residence. Det. Bledsoe also stated that the residence was not visible from Atkins Road and that a gate separated the residence from the street. Det. Bledsoe affirmed that she did not personally run the registrations of the automobiles found at the scene. Det. Bledsoe acknowledged that the possible presence of firearms and the Defendant's prior criminal incidents were mentioned when the other officers chose to join in the execution of the arrest warrant. Det. Bledsoe stated that Capt. Morgan and Deputy Jones looked in the residence's windows to see if there was anyone in the home. When the officers did not see anyone, they shouted "police" and, after no one answered, entered the home.

Det. Bledsoe testified that officers sometimes check booking sheets from prior incidents, but that she had not checked the booking sheets prior to serving the arrest warrant. She stated that she did not know that one of the Defendant's prior booking sheets listed his employer. Det. Bledsoe stated that the warrant was served after normal working hours around 6:30 p.m. Det. Bledsoe again testified that she did not see the ammunition or marijuana initially; other officers did. Det. Bledsoe affirmed that all the officers who initially participated in attempting to execute the arrest warrant returned to the residence with an evidence technician and executed the search warrant around 10:00 p.m. Det. Bledsoe stated that the Defendant was not arrested that night.

On redirect, Det. Bledsoe confirmed that if the directions in the affidavit are followed, without using the numerical measurements, they will lead to the residence, and if one follows the numerical measurements and drives four miles on Old Store Road, one will pass Atkins Road. Finally, the Court asked Det. Bledsoe if she remembered stating that the officers had reason to believe that the Defendant was inside the residence when they attempted to execute the arrest

5

warrant. Det. Bledsoe affirmed that the officers believed the Defendant was in the residence because of the cars at the residence and the fact that the Defendant was known to reside there.

### B. *Captain Michael Morgan*

Captain Michael Morgan of the Monroe County Sheriff's Department testified that on April 10, 2007, Det. Bledsoe informed him that she was going to execute an arrest warrant on the Defendant for child abuse. Capt. Morgan said that Deputy Jones, Agent Parris, and another uniformed officer were present when Det. Bledsoe stated her intentions. Capt. Morgan explained that the Defendant had a reputation of being combative with officers and the Defendant's family had stated he was being more aggressive than usual. Capt. Morgan said he knew where the Defendant lived, so he accompanied Det. Bledsoe and drove to the residence without using any directions. Capt. Morgan said Deputy Jones recognized one of the automobiles in the driveway as belonging to the Defendant. They ran the license plates and found that the cars were registered to the Defendant.

Capt. Morgan testified that the officers announced their presence, and he knocked on the door, which swung open. Thereafter, the officers went into the residence to look for the Defendant. Capt. Morgan said the officers swept the residence with their weapons drawn and thereby discovered the marijuana and ammunition in plain sight in the bedroom. After the sweep Capt. Morgan and Det. Bledsoe went to get a search warrant and left a couple of officers to secure the scene. Capt. Morgan stated that the correct address for the residence was 231 Atkins Road and noted that "Winkler" was written on the mailbox in front of the residence. Capt. Morgan confirmed that everything to which he swore in the affidavit was true except for the typo which listed the street address as 321 Atkins Road. Capt. Morgan stated that he went to Judge Dixon's residence on April

6

10, 2007, and the judge signed the search warrant. Capt. Morgan testified that the only ongoing investigation at the time was one by the Monroe County Sheriff's Department regarding allegations of child abuse.

On cross-examination, Capt. Morgan stated that it was in the evening but was not dark when the officers first arrived at the residence. Capt. Morgan had arrested the Defendant before but admitted that he did not pull any of the Defendant's old booking sheets prior to attempting to execute the warrant. Capt. Morgan confirmed that Deputy Jones ran one of the car's license plates and the car was registered to the Defendant, but he was not sure if Deputy Jones ran the other car's license plate. Capt. Morgan affirmed that he looked through the house's windows before the officers went into the residence, but he could not remember whether any lights were on inside the residence. Capt. Morgan testified that no one answered the door or responded to the officers when they announced their presence. Capt. Morgan stated that when the officers searched the home they only looked in areas where the Defendant could have hidden. Capt. Morgan also confirmed that the residence was not visible from the road. Capt. Morgan again explained that "321 Atkins Road" in the affidavit and the use of "2006" in the warrant were typos.

Finally, Capt. Morgan discussed the presence of ATF Agent Parris during the execution of the warrants. Capt. Morgan stated that he was not sure if Agent Parris entered the residence during the attempt to execute the arrest warrant, but he said Agent Parris did enter the residence when the search warrant was executed. Capt. Morgan remembered showing Agent Parris the ammunition and asking him what kind of ammunition it was. Finally, Capt. Morgan confirmed that the Defendant was not arrested the night the warrants were executed.

7

Case 3:08-cr-00014-TAV-HBG   Document 28   Filed 10/17/08   Page 7 of 18   PageID #: 160

*C. Agent Steven Parris*

Agent Parris testified that he has been a special agent for the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") for twenty-one years and that he lives in Madisonville in Monroe County Tennessee. Agent Parris explained that Monroe County is one of his assigned counties and he is often at the Monroe County Sheriff's Department. Agent Parris stated that when he was transferred to the area in 1997 the Defendant's name was one of the first names he heard mentioned in connection with local crimes.

Agent Parris stated that on April 10, 2007, he was not investigating the Defendant but was present when Det. Bledsoe came into the Monroe County Sheriff's Department and said she was going to arrest the Defendant. Agent Parris explained that Capt. Morgan did not think it was a good idea for Det. Bledsoe to attempt to arrest the Defendant alone, so Capt. Morgan, Agent Parris, and other officers accompanied her. Agent Parris stated that once he and the officers arrived at the residence he 'laid back' since ATF agents do not serve warrants in child neglect and abuse cases.

Agent Parris stated that when the other officers knocked on the door, the door opened, and the other officers entered the residence. Agent Parris said he did not enter the residence at that time, but after the officers found the ammunition, they came out of the house and asked Agent Parris what they should do. Agent Parris told them to back out of the house and get a search warrant. Agent Parris said he did not get a federal warrant because on April 10, 2007, the investigation was a state investigation, and he noted that his first report on the Defendant was made April 16, 2007, after the incident.

On cross-examination, Agent Parris testified that it was early evening when officers

8

initially arrived at the residence but not yet dusk. Agent Parris did not recall the officers looking in the windows before they entered, but he stated that doing so would be normal. When Capt. Morgan and Det. Bledsoe left to obtain the search warrant, Agent Parris testified that he remained at the residence with three or four other officers to secure the house. Agent Parris stated that he did not initially go into the residence when the search warrant was executed, but after the other officers told him what they found inside the home, he entered. Agent Parris admitted he interviewed the Defendant after this incident.

### III. ANALYSIS

The Fourth Amendment of the United States Constitution protects citizens against unreasonable searches or seizures. The Defendant contends that the initial entry into his residence was not supported by probable cause, and therefore, the evidence recovered as a result of the initial entry and later entry with the search warrant should be suppressed as the fruit of the poisonous tree. Alternatively, the Defendant contends that the search warrant was defective because it was issued by a state general sessions court judge in violation of Federal Rule of Criminal Procedure 41, and any evidence recovered as a result of the search warrant should be suppressed. Finally, the Defendant argues that the errors in the search warrant and the underlying affidavit: (1) negate probable cause for the warrant, (2) make the warrant insufficient for lack of requisite specificity, and (3) invalidate the warrant because it was more than a year old at the time of execution. The Government denies that any of these arguments provide sufficient grounds for suppressing the physical evidence discovered at the Defendant's residence. The Court will consider each of these contentions in turn.

9

### A. *Probable Cause for the Initial Entry*

The Defendant argues that when law enforcement officers enter a residence to execute an arrest warrant and no exigent circumstances exist the officers must have a reasonable belief that the location is the defendant's residence and that the suspect is at that location. The Defendant alleges that the officers in the present case did not have a reasonable belief that the Defendant was in the residence at 231 Atkins Road, and therefore, their entry to execute the arrest warrant was unreasonable. The Government counters that the presence of cars, including one which the Defendant was known to drive, in the residence's driveway gave the officers reason to believe the Defendant was inside the home.

The United States Supreme Court has previously established that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." United States v. Payton, 445 U.S. 573, 603 (1980). However, the Court has not established whether "reason to believe" is the equivalent of probable cause or if it is a lesser standard of suspicion. In United States v. Hardin, the Sixth Circuit Court of Appeals ruled that its prior "holding" in United States v. Pruitt, 458 F.3d 477 (6th Cir. 2006)—that "reason to believe" is equivalent to "probable cause"—was "simply dicta." 539 F.3d 404, 415 (6th Cir. 2008). The facts presented to the Court of Appeals in Hardin did not supply an occasion for deciding the appropriate interpretation of Payton either. Id. at 416. Nonetheless, the court briefly explained in a footnote that "probable cause is the correct standard and that the Supreme Court in Payton did not intend to create, without explanation or elaboration, an entirely new standard of 'reason to believe.'" Id. at n. 6. Therefore, this Court will evaluate whether the officers had probable cause to believe that the Defendant was within his home

when they attempted to execute the arrest warrant.

    A number of factors support finding the officers had probable cause to believe the Defendant was in his residence. First and foremost, the home was known to be Defendant's residence. The Supreme Court has previously recognized that "an arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest." Steagald v. United States, 451 U.S. 204, 221 (1981) (citing Payton, 451 U.S. at 602-03). In addition, the Det. Bledsoe, Capt. Morgan, and Agent Parris testified that they attempted to execute the arrest warrant after normal working hours. The fact that at least one of the vehicles in the driveway was registered to the Defendant also strongly contributes to a finding of probable cause. See United States v. Ellis, 125 Fed. Appx. 691, 696 (6th Cir. 2005) (finding probable cause to enter a third party's residence even though the street number in the arrest warrant was incorrect where a vehicle in the driveway was registered to a female with the defendant's last name and officers had received an anonymous tip that the defendant was staying in the trailer).

    Because the officers' knew that the premises was Defendant's residence and at least one of the cars in the driveway at the time of the attempted arrest was registered to the Defendant, the Court finds that the officers had probable cause to believe the Defendant was inside the residence and, thus, properly entered the home in an attempt to execute the arrest warrant. Therefore, the Defendant's contention that the physical evidence that was found in plain sight after the entry should be suppressed fails.

## B. *Federal Rule of Criminal Procedure 41*

    The Defendant alternatively alleges that the search warrant obtained after the initial search violates Federal Rule of Criminal Procedure 41 because it was issued by a state general

11

sessions judge, rather than a federal judge or a state judge of a court of record. The Government contends that the Federal Rules of Criminal Procedure are not applicable to the search warrant because it was obtained by a state law enforcement officer.

Rule 41 states that at the request of a federal law enforcement officer or an attorney for the government, a federal magistrate judge, or if none is reasonably available, a judge of a state court of record in the district has authority to issue a search warrant for property located within that district. Fed. R. Crim. Pro. 41(b). Rule 41 is meant to insure that federal officers investigating federal crimes comply with the federal rules governing their conduct and do not use state procedures to usurp the federal rules. United States v. Searp, 586 F.2d 1117, 1121 (6th Cir. 1978). However, "mere federal involvement" is not enough to trigger Rule 41; there must be "significant involvement" by federal officers prior to the search. United States v. Hunter, 4 Fed. Appx. 295, 301 (6th Cir. 2001).

Whether federal involvement in an investigation warrants the application of Rule 41 depends upon a number of factors including: the length of federal officers' involvement, which agency undertook the investigation, and which agency took the lead in obtaining the warrant. For example in United States v. Searp, the court found that Rule 41 applied to the search warrant where the investigation was "a joint undertaking between the Kentucky police and the FBI from the beginning," an FBI agent swore out the affidavit supporting the search warrant, there were five FBI agents present at the search, and a federal agent directed the search. 586 F.2d at 1121. Following the same rationale, the court in United States v. Alcorn held that Rule 41 was not applicable where only a single agent was consulted prior to the search, the federal agent did not participate in procuring the warrant, and the decision to pursue federal charges was made after the search. 9 Fed.

12

Appx. 426, 431 (6th Cir. 2001).

In the present case, Det. Bledsoe, a Monroe County law enforcement officer, obtained an arrest warrant based upon suspicions of child abuse and neglect, a state law matter. ATF Agent Parris volunteered to accompany Det. Bledsoe, as did a number of other officers, in order to insure her safety when she attempted to arrest the Defendant—a felon with a reputation for violence. After the initial entry into the Defendant's residence, Det. Bledsoe and Capt. Morgan obtained a search warrant for the residence based upon the marijuana and ammunition that Capt. Morgan and other officers had seen in plain sight when they attempted to execute the arrest warrant. Capt. Morgan, a Monroe County law enforcement officer, swore out the underlying affidavit.

At the hearing, Agent Parris testified that he was not investigating the Defendant at the time the search warrant was obtained. Agent Parris did advise the officers that they should obtain a search warrant based upon the incriminating items that were in plain sight, but there is no indication that he was more than incidentally involved in the procurement of the search warrant. Agent Parris did not swear out the underlying affidavit nor did he direct its execution. In addition, Agent Parris testified that his first investigatory report on the Defendant was made almost a week after the search, and there is no indication that he was undertaking an investigation of the Defendant prior to his volunteering to assist the state officers in executing their arrest warrant.

Based upon the foregoing, the Court finds that Federal Rule of Criminal Procedure 41 does not apply to the search warrant, and therefore, the fact that the search warrant was obtained from a state general sessions judge is not grounds for suppression.

*C. Warrant and Affidavit Errors*

The Defendant makes a number of arguments for suppression of the evidence against him based upon the typographical errors in the search warrant and its underlying affidavit.

*1. Requisite Particularity*

First, the Defendant alleges that one could not use the directions in the search warrant to find the Defendant's residence, and therefore, the warrant was defective because it did not describe the premises to be searched with requisite particularity. The Government responds that officer knowledge and the picture attached to the affidavit supplied requisite particularity and probable cause.

The Fourth Amendment protects citizens against unreasonable searches and seizures of their persons, houses, papers, and effects. U.S. Const. amend IV. A warrant cannot issue unless it describes the place to be searched with requisite particularity. U.S. Const. amend IV. To determine if this requirement is met, the court must consider "whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." United States v. Durk, 149 F.3d 464, 465 (6th Cir. 1998). "An error in a warrant does not automatically invalidate a search warrant," so long as officers are reasonably likely to locate the premises without mistakenly searching another premises. United States v. Pelayo-Landero, 285 F.3d 491 (6th Cir. 2002).

In a number of factually similar cases, the Court of Appeals has approved decisions not to suppress evidence where the underlying search warrant contained street address errors or other related mistakes. In United States v. Durk, the warrant described the premises to be searched as "a

single family red brick ranch home located at 4612 Fulton . . . approximately 3 houses to the east of Grandview" when in fact the home was at 4216 Fulton and was three houses to the west of Grandview. 149 F.3d at 465. The court in Durk decided that the inaccuracies would not have led to a mistaken search of other premises because the executing officer in the case was also the affiant and had just come from the premises to be search and a second officer remained at the premises to be searched while the search warrant was being procured. Id. at 466. Similarly, the court in United States v. Pelayo-Landero concluded that an incorrect street number did not negate requisite particularity where the officers had previously surveilled the premises and a photograph and an accurate physical description of the home were attached to the warrant. 285 F.3d at 497.

The decisions in Durk and Pelayo-Landero accord with the rule in the Sixth Circuit that "the knowledge of executing officers... is a factor which may cure any insufficiencies in the search warrant's description of the premises." United States v. Brown, 49 F.3d 1162, 1169 (6th Cir. 1995).

In the present case, the affiant officer Capt. Morgan testified that because he had previous knowledge of the Defendant he drove directly to the Defendant's home when the officers set out to execute the arrest warrant. Capt. Morgan drove from the Defendant's home to obtain the warrant and then returned, and officers remained at the scene securing the home. Based upon his personal knowledge of the premises and the officers' presence at the scene, there was virtually no possibility that the executing officer would not locate the correct house or that another premises would be mistakenly searched. In addition, a picture of the home along with an accurate physical description was attached to the warrant. Regardless of the missing decimal point in the directions in the search warrant and the typographical error in the street number in the affidavit, it is a near

15

certainty that Capt. Morgan and the other officers would find and search the correct home.

Based upon the foregoing, the Court concludes that the warrant identified the premises to be searched with requisite particularity, and therefore, Defendant's argument that the search was unreasonable because of the errors in the search warrant and the affidavit fails.

*2. Lack of Probable Cause*

In an argument similar to the one previously discussed, the Defendant contends that the officers' entry was unreasonable because the search warrant was issued without probable cause since the underlying affidavit listed the address as 321 Atkins Road. For the reasons discussed at length above, this argument fails.

The officers were lawfully in Defendant's residence at the time they saw the ammunition and marijuana in plain sight. The ammunition and marijuana provided probable cause to support a search warrant, which was obtained by Det. Bledsoe and Capt. Morgan. The fact that the affidavit contained the incorrect street number has no effect on the probable cause supporting the search warrant. Capt. Morgan, the affiant officer, swore to the Monroe County judge and testified before this Court that he saw the ammunition and the marijuana, and no evidence has been presented to refute these sworn statements. Capt. Morgan's statements provide probable cause to support the warrant, and therefore, the Defendant's argument that the search warrant was not supported by probable cause fails.

*3. Staleness of the Warrant*

Finally, the Defendant moves to suppress the evidence because the search was based upon a stale warrant and was therefore unreasonable. The Defendant alleges that the search warrant was stale because it was issued April 10, 2006, but was not executed until April 10, 2007. The

16

Government maintains that the affidavit and warrant were both signed and the warrant was executed on April 10, 2007, notwithstanding the date on the warrant.

Det. Bledsoe, Capt. Morgan, and Agent Parris all testified that the search warrant of the Defendant's home was signed and executed April 10, 2007. The officers filled in a template which had the year next to the judge's signature line already completed as '2006' when they drafted the warrant. Capt. Morgan manually replaced the '2006' that appeared next to his signature with a '2007,' but the judge did not do so. On the affidavit, both Capt. Morgan and the judge dated their signatures as April 10, 2007. Although the warrant lists the year in the date next to the judge's signature as '2006,' the evidence presented to the Court indicates that the '2006' was a typographical error and the warrant was both signed and executed on April 10, 2007. Therefore, the Court finds that the warrant was timely executed and the Defendant's contention that the search of his residence was unreasonable because the search warrant was stale fails.

## IV. CONCLUSION

After carefully considering the evidence introduced during the course of the evidentiary hearing and reviewing the relevant legal authorities, the Court finds that Defendant's arguments for suppression fail, and for the reasons set forth herein, it is **RECOMMENDED** that the Defendant's Motion to Suppress [**Doc. 15**] be **DENIED**.[1]

Respectfully submitted,

    s/ H. Bruce Guyton
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).